UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MADELYN CASANOVA,

        Plaintiff,

v.                                   Case No:  2:16-cv-198-FtM-38CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff Madelyn Casanova seeks judicial review of the denial of her claim for disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law.  For the reasons discussed herein, the Court recommends that the decision of the Commissioner be affirmed.

## I.    Issues on Appeal[2]

Plaintiff raises four issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly assessed the medical opinions; (2) whether substantial

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

evidence supports the ALJ's finding that Plaintiff does not meet or equal Listings 12.04 and 12.06; (3) whether substantial evidence supports the ALJ's determination of Plaintiff's Residual Functional Capacity ("RFC"); and (4) whether the ALJ properly assessed Plaintiff's credibility.

## II.   Procedural History and Summary of the ALJ's Decision

On September 26, 2012, Plaintiff filed applications for a period of disability, DIB and SSI.  Tr. 78, 87.  Plaintiff alleged disability due to major depression, memory problems and diabetes.  Tr. 78.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 78-95, 98-123.  Plaintiff requested and received a hearing before ALJ Ronald E. Miller on February 25, 2014, during which the ALJ appeared via video teleconference.[3]  Tr. 18, 201-05.  Plaintiff, with the assistance of a Spanish interpreter, appeared and testified in person at the hearing in Port Charlotte, Florida and was represented by counsel during the hearing.   Tr. 40.  A vocational expert ("VE") appeared and testified in person at the hearing.  *Id.*

On March 11, 2014, the ALJ issued a decision finding Plaintiff not disabled from December 1, 2010 through the date of the decision.   Tr. 18-29.   At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and had not engaged in substantial gainful activity since December 1, 2010.   Tr. 20.   At step two, the ALJ determined that Plaintiff has the following severe impairments: hypertension; diabetes mellitus with neuropathy and chronic kidney disease; gastro esophageal reflux disease ("GERD");

---

[3] The ALJ presided over the hearing from Franklin, Tennessee.   Tr. 18.

gastritis; obesity; anxiety disorder; and depressive disorder.  *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 21.

> The ALJ then determined that Plaintiff has the RFC to perform light work,
>
> except she can frequently stoop, crouch, kneel, crawl, balance and climb stairs and ramps but only occasionally climb ropes, ladders or scaffolds.  [Plaintiff] cannot tolerate any exposure to unprotected heights or dangerous machinery.   She is limited to simple, routine, repetitive work with no timed-production work.   Public contact must be brief, infrequent and casual.   Additionally, [Plaintiff] can adapt to simple changes in the workplace.

Tr. 41.   Next, the ALJ found that Plaintiff is unable to perform any past relevant work.   Tr. 28.   Considering Plaintiff's age, education, work experience and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and therefore concluded she has not been under a disability from December 1, 2010 through the date of the decision.   Tr. 28-29.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on September 23, 2015.   Tr. 6-8.   Accordingly, the March 11, 2014 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on March 14, 2016.   Doc. 1.   This matter is now ripe for review.[4]

---

[4]  Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of

### III.    Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step sequential analysis for evaluating a claim of disability.   See 20 C.F.R. §416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

Atha v. Comm'r Soc. Sec. Admin., 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.   Id. at 933; Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing Richardson v. Perales, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by

the court.

substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."   *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F.

App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review.   *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV.   Discussion

### a.  *Whether the ALJ properly assessed the medical opinions*

In assessing Plaintiff's RFC, the ALJ considered and discussed the medical records of Maribel Aguilera, M.D., who treated Plaintiff for her mental conditions from February 2011 to March 2012.   Tr. 24-25, 436-42, 482-87.   Dr. Aguilera diagnosed Plaintiff with major depressive affective disorder and treated her with medications.   Tr. 438, 483, 487.   The ALJ also noted the medical records of Marta Fernandez, M.D., Plaintiff's primary care physician who treated her from August 2011 to February 2014.   Tr. 23-24, 27, 444-55, 528-51, 613-51, 714-59, 884-938, 942-45.   Plaintiff saw Dr. Fernandez for various health issues, including diabetes mellitus type II, diabetic nephrology, hypertension, GERD and gastritis.   Tr. 444-55, 528-51, 613-51, 714-59, 884-938, 942-45.   As noted by the ALJ, Dr. Fernandez indicated on August 9, 2012 that Plaintiff's diabetes was controlled.   Tr. 23, 718, 894.

Furthermore, the ALJ considered and discussed the medical records of Mark S. Russo, M.D., Ph.D., a treating nephrologist, and Julian Perez-Barrios, M.D., a treating gastroenterologist.   Tr. 23-24, 476-79, 499-512, 565-76, 654-68, 796-805, 819-83.   Dr. Fernandez referred Plaintiff to Dr. Russo for Plaintiff's diabetic nephropathy.   Tr. 855.   Dr. Russo treated Plaintiff's chronic kidney disease related

to diabetes mellitus from November 30, 2011 to August 21, 2013.   Tr. 24, 476-79, 499-512, 819-83.   Plaintiff was referred to Dr. Perez-Barrios because of her helicobacter pylori ("h. pylori") infection.   Tr. 574.   Dr. Perez-Barrios saw Plaintiff five times between October 9, 2012 and April 22, 2013.   Tr. 24, 565-76, 654-68, 796-805.   The ALJ noted that Dr. Perez-Barrios performed an esophagogastroduodenoscopy ("EGD")[5] on November 13, 2012 to treat Plaintiff's GERD.   Tr. 24, 572-76.   The ALJ did not specify how much weight he accorded to each doctor's opinion.   Tr. 23-28.

Plaintiff argues that the ALJ erred in assessing these opinions by not specifying the weight he accorded to them and not discussing their pertinent parts. Doc. 18 at 4-6.   The Commissioner responds that Plaintiff does not provide which pertinent parts of the opinions conflict with the ALJ's findings.   Doc. 19 at 4.   The Commissioner also asserts that the ALJ not weighing medical opinions alone is not reversible error.   *Id.* at 4-5.

The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."   20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).   Treatment notes from acceptable medical sources that

---

[5] EGD is a test to examine the lining of the esophagus, stomach and first part of the small intestine.   MedlinePlus, https://medlineplus.gov/ency/article/003888.htm (last visited July 12, 2017).

include a description of the claimant's symptoms, a diagnosis, and a judgment about the severity of his impairments are medical opinions. *Winschel*, 631 F.3d at 1178-79.

Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

In the Eleventh Circuit, the law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."

*Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)) (per curiam).   The ALJ's failure to do so, however, is harmless if it did not affect the ALJ's ultimate determination.   *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citing *Dyer*, 395 F.3d at1211).   The Eleventh Circuit has held that the court has no rigid requirement, "the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole."   *Dyer*, 395 F.3d at 1211 (alteration in original) (internal quotation marks and citation omitted).   The Eleventh Circuit has explained that the question before the court is whether substantial evidence in the record supports the ALJ's opinion as a whole.   *Id.* (citation omitted).   As a result, even if the ALJ commits an error, the error is harmless if it did not affect the ALJ's ultimate determination.   *Hunter*, 609 F. App'x at 558.

Here, the Court recommends that the ALJ's failure to state with particularity the weight accorded to the opinions of Drs. Aguilera, Fernandez, Russo and Perez-Barrios is not reversible error.   Although the ALJ did not explicitly identify the doctors by name in his opinion, the ALJ considered and discussed their treatment notes in assessing Plaintiff's RFC.   Tr. 23-27.   After the ALJ expressly discussed the doctors' medical opinions along with other evidence, he concluded that Plaintiff's treatment has been effective and Plaintiff has not been "entirely compliant" with her health treatment.   Tr. 27.   Based on his discussion of evidence, the ALJ concluded that his analysis is consistent with his previous findings regarding Plaintiff's

restrictions.   Tr. 27.   The ALJ further determined that the record supports his assessment of Plaintiff's RFC.   Tr. 28.

Plaintiff does not argue that the opinions of Drs. Aguilera, Fernandez, Russo and Perez-Barrios do not support the ALJ's RFC findings.   Doc. 18 at 4-6.   Rather, Plaintiff argues that the ALJ did not consider the "pertinent" parts of their opinions, precluding this Court's meaningful review of the ALJ's decision.   Doc. 18 at 4-6.   As noted, however, the ALJ is not required to refer to every piece of evidence in his decision.   *See Dyer*, 395 F.3d at 1211.

Furthermore, Plaintiff does not show which pertinent portions of the opinions the ALJ did not consider, and also how the ALJ's consideration of these "pertinent" portions would have affected the ALJ's ultimate decision.   Doc. 18 at 4-6; *see Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."); *Hunter*, 609 F. App'x at 558.   In fact, even if as Plaintiff argues, certain portions of these doctors' medical opinions contradict the ALJ's analysis, "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly."   *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389-409).   Similarly, although the ALJ did not state the weight accorded to these opinions, Plaintiff does not provide any evidence that this error would have affected the ALJ's ultimate determination. Doc. 18 at 4-6; *see Ellison*, 355 F.3d at 1276; *Hunter*, 609 F. App'x at 558.

Because the ALJ provided a detailed analysis of Plaintiff's medical records to support his decision, the Court is able to conclude from the ALJ's decision that he did not broadly reject the medical opinions but rather considered Plaintiff's medical condition as a whole.   The ALJ's clear discussion of Plaintiff's medical records supported by substantial evidence distinguishes this case from *Winschel*, in which the Eleventh Circuit ordered the ALJ to consider and explain the weight accorded to the medical opinions because the ALJ did not mention the treating physicians' medical opinions or discuss pertinent elements of the examining physicians' medical opinions.   *Winschel*, 631 F.3d at 1179.   Thus, the Court recommends that the ALJ's error of not stating the weight given to the opinions of Drs. Aguilera, Fernandez, Russo and Perez-Barrios was harmless.   *See Laurey v. Comm'r, Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015); *Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010); *see also Tillman v. Comm'r, Soc. Sec. Adm.*, 559 F. App'x 975, 975 (11th Cir. 2014) ("Ordinarily, an ALJ's failure to explain the particular weight given to the different medical opinions provided is reversible error. However, when the ALJ's error did not affect its ultimate findings, the error is harmless.").

Plaintiff further argues that the ALJ erred by according little weight to the opinions of Miriam Ajo, M.D., a treating psychiatrist.   Tr. 26; Doc. 18 at 6-9.   Dr. Ajo first performed a psychiatric evaluation of Plaintiff on September 18, 2012.   Tr. 518-23.   Dr. Ajo noted that Plaintiff was unemployed and last worked as a security guard in a school three years prior.   Tr. 518.   Dr. Ajo noted Plaintiff's long history of psychiatric treatment, which started when Plaintiff was in her 20s.   *Id.*   Plaintiff

told Dr. Ajo that she had severe depression and anxiety and used to receive treatment from a psychiatrist in Miami. *Id.* Dr. Ajo indicated, however, that although Plaintiff used to be on multiple medications, she stopped taking medications in July 2012. *Id.* Plaintiff also denied manic or psychotic symptoms, despite having depression symptoms such as inability to experience pleasure, poor energy, sad mood, lack of motivation, anxiety and poor sleep. *Id.* She further denied any suicidal ideation. *Id.*

Plaintiff's evaluation revealed that she did not have any history of thoughts or intention of suicide or homicide and any substance abuse problem. Tr. 518-19. Plaintiff indicated that she was satisfied with her current living situation, although she had experienced difficulty performing work or work-like activity. Tr. 520. Plaintiff also informed Dr. Ajo that she had not been in special education classes, had not failed or repeated a grade and did not have a history of developmental delay. *Id.* She appeared well groomed and exhibited fund of knowledge, fair judgment and insight and coherent, logical and goal-directed thoughts. Tr. 520-21. Although Plaintiff appeared depressed and anxious, she was oriented in all spheres and had normal speech and psychomotor. Tr. 521-22. She was also cooperative toward the interviewer and appeared to be competent to make decisions regarding the treatment plan. Tr. 522. Based on the above findings, Dr. Ajo advised Plaintiff to return in

thirty days.   Tr. 523.   Dr. Ajo also prescribed Amitriptyline[6] 25mg and Vistaril[7] 25mg.   Tr. 522.

The result of Plaintiff's evaluation remained the same throughout Plaintiff's visits to Dr. Ajo on October 16, 2012, November 12, 2012 and December 11, 2012. Tr. 694-701, 703-05.   On October 16, 2012, Plaintiff returned to Dr. Ajo, who noted that Plaintiff continued to have severe constipation, and her sleep problem had not improved much.   Tr. 705.   Nonetheless, Plaintiff still denied having any suicidal ideation or psychotic symptoms.   *Id.*   Dr. Ajo discontinued the prescription of Amitriptyline, which Plaintiff reported made her more depressed, prescribed Prozac[8] and increased the dosage of Vistaril.   *Id.*

On November 12, 2012, Plaintiff reported lack of sleep to Dr. Ajo.   Tr. 700. She also continued to have a sad mood, sense of hopelessness and worthlessness and inability to experience pleasure.   *Id.*   She reported eating a lot, although she still denied having any suicidal ideation or psychotic symptoms.   *Id.*   Dr. Ajo decided to increase the prescribed dosage of Prozac and start the prescription of Temazepam[9] to treat Plaintiff's sleep problem.   *Id.*

---

[6] Amitriptyline is used to treat symptoms of depression.   Drugs.com, https://www.drugs.com/amitriptyline.html (last visited June 6, 2017).

[7] Vistaril is a sedative used to treat anxiety and tension.   Drugs.com, https://www.drugs.com/vistaril.html (last visited June 6, 2017).

[8] Prozac is used to treat major depressive disorder.   Drugs.com, https://www.drugs.com/prozac.html (last visited June 6, 2017).

[9] Temazepam is used to treat insomnia symptoms.   Drugs.com, https://www.drugs.com/temazepam.html (last visited June 6, 2017).

Dr. Ajo examined Plaintiff again on December 11, 2012. Tr. 586-89. The result of Plaintiff's psychiatric evaluation was unremarkable and was substantively similar to the previous ones. Tr. 586-88. Dr. Ajo also noted that Plaintiff had been sleeping better with Temazepam, although she had been severely depressed. Tr. 588. Plaintiff reported that she felt hopeless, helpless and unable to function at all. *Id.* Plaintiff admitted having recurrent passive suicidal ideation while denying having active suicidal ideation. *Id.* Plaintiff also indicated that she did not want to be at home and was afraid to be by herself. *Id.* As a result, Dr. Ajo involuntarily committed Plaintiff under the Baker Act.[10] *Id.*, Tr. 582-83.

Dr. Ajo next saw Plaintiff on January 23, 2013. Tr. 674-77. During this visit, Plaintiff admitted to being noncompliant with taking medications for several weeks and to recently being admitted at Vista in December 2012 for severe depression. Tr. 674, 676. Plaintiff's mood was depressed and constricted, and Plaintiff had ideas of worthlessness. Tr. 675. In contrast, Plaintiff again was well groomed and had fund of knowledge during this visit. Tr. 674. Plaintiff also demonstrated good judgment and insight and coherent, logical and goal-directed thoughts, although she had auditory hallucinations. Tr. 675. Plaintiff's speech and psychomotor were normal, and she did not have any suicidal or homicidal ideation. Tr. 675-76. Plaintiff was oriented in all spheres. Tr. 675. Dr. Ajo diagnosed Plaintiff with major depressive disorder without recurrent severity and unspecified

---

[10] The Florida Mental Health Act of 1971 (Florida Statutes §§ 394.451-394.47891), commonly known as the "Baker Act," allows the involuntary institutionalization and examination of an individual. *See id.*

anxiety state, and provided a deferred diagnosis on personality disorders.   Tr. 677.
Dr. Ajo advised Plaintiff to return in thirty days.   *Id.*

In her visit to Dr. Ajo on February 22, 2013, Plaintiff showed improvement and
no longer exhibited auditory hallucinations or depressed and anxious mood.   Tr. 671.
Plaintiff also did not have ideas of worthlessness, and her mood was appropriate.   *Id.*
Although Plaintiff reported being in a depressed mood most of the time and feeling
anxious, she still denied having any suicidal ideation or psychotic symptoms.   Tr.
672.   Dr. Ajo recommended that Plaintiff return in sixty days.   Tr. 673.

Plaintiff's psychiatric evaluations from May 14, 2013, June 19, 2013, August
19, 2013, September 30, 2013 and November 22, 2013 were unremarkable, except
that she had depressed and constricted moods beginning on June 19, 2013.   Tr. 771-
94.   Throughout these visits, Plaintiff continued to deny having any suicidal
ideation, although Plaintiff had complained of various problems such as sad mood,
inability to experience pleasure, low energy level and poor concentration.   Tr. 773,
778, 789, 793.

On February 24, 2013, Dr. Ajo provided a medical assessment of Plaintiff's
ability to do work-related activities and opined that she has no ability to deal with
work stress or maintain attention/concentration.   Tr. 712.   She also noted that
Plaintiff has a poor ability to relate to co-workers, deal with the public, interact with
supervisors and function independently, and she has a fair ability to follow work rules
and use judgment.   *Id.*   Dr. Ajo further opined that Plaintiff has no ability to
understand, remember and carry out complex job instructions, but has a fair ability

to do detailed, not complex, or simple job instructions.   Tr. 713.   Furthermore, Dr. Ajo noted that Plaintiff has only a fair ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability.   *Id.*   The ALJ considered and discussed this opinion in assessing Plaintiff's RFC.   Tr. 26.

Dr. Ajo provided a second assessment on January 17, 2014.   Tr. 939-40.   She opined that Plaintiff has no ability to deal with the public or with work stress and a poor ability to function independently and maintain attention/concentration.   Tr. 939.   Dr. Ajo determined that Plaintiff has a fair ability to follow work rules, relate to co-workers and interact with supervisors and a good ability to use judgment.   Tr. 939.   Dr. Ajo also found that Plaintiff has a poor ability to understand, remember and carry out complex, or detailed but not complex, job instructions and a fair ability to carry out simple job instructions.   Tr. 940.   Furthermore, she opined that Plaintiff has a poor ability to relate predictably in social situations, a fair ability to demonstrate reliability and a good ability to maintain personal appearance and behave in an emotionally stable manner.   *Id.*   After discussing this opinion in detail, the ALJ accorded little weight to the two assessments because Dr. Ajo's treatment notes and Plaintiff's reported activities did not support the alleged limitations.   Tr. 26-27.

Plaintiff argues that the ALJ erred by according little weight to Dr. Ajo's assessments because Plaintiff continuously exhibited a depressed and anxious mood, auditory hallucinations and ideas of worthlessness; and she was diagnosed with

major depressive order.   Doc. 18 at 7.   Plaintiff also asserts that these findings are consistent with the opinions of Dr. Aguilera and Laura Artiles, Ph.D., who examined Plaintiff in July 2010.   *Id.*

The Commissioner responds that the ALJ properly discounted the weight accorded to Dr. Ajo's assessments because Dr. Ajo's treatment notes and Plaintiff's reported activities indeed undermine Dr. Ajo's conclusions of Plaintiff's limitations. Doc. 19 at 5-7.   The Commissioner argues that even Dr. Aguilera's records contain evidence Plaintiff was casual in appearance, was fully oriented and had normal speech and thoughts.   *Id.* at 8.

Here, the Court recommends that the ALJ properly articulated his reasons for discounting the weight accorded to Dr. Ajo's assessments.   As noted, the ALJ may discount the weight accorded to a treating physician if good cause is shown.   *Castle*, 557 F. App'x at 854 (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo*, 955 F. Supp. at 1462.   Good cause exists if the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.   *See Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

The ALJ properly established good cause by finding that Dr. Ajo's own treatment notes do not support her assessments of Plaintiff's limitations.   Tr. 27; *see id.*   As noted, during all of Plaintiff's visits to Dr. Ajo, Plaintiff had normal speech and psychomotor, fair or good judgment and insight and coherent, logical and goal-directed thoughts and was oriented in all spheres.   Tr. 521-22, 587-88, 671-72, 675-76, 695-96, 699-700, 704-05, 766, 768-69, 771-73, 777-78, 783, 788-89, 793.

Furthermore, Plaintiff reported that she takes care of her daughter and does not need any special reminders to take care of personal needs and grooming or help or reminders to take medicine.   Tr. 326-27.   She also noted that she is able to prepare her own meals on a daily basis, do laundry with help, sometimes go out twice weekly, walk, drive a car, ride in a car, shop in stores and count change.   Tr. 327-28.   Even if contrary evidence exists, it is not the function of the Court to re-weigh or resolve conflicts in the evidence.   *Lacina*, 606 F. App'x at 525.

Moreover, as the Commissioner argues, Dr. Ajo completed her assessments by checking off boxes on form questionnaires.   Doc. 19 at 5-6; Tr. 712-13, 939-40.   Form questionnaires or so-called "checklist" opinions such as that completed by Dr. Ajo generally are disfavored.   *Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions."); *Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations).   As a result, the Court recommends that the ALJ appropriately articulated good cause to discount the weight accorded to Dr. Ajo's assessments.   *See Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

> b. *Whether substantial evidence supports the ALJ's finding that Plaintiff does not meet or equal Listings 12.04 and 12.06*

At step three, although the ALJ acknowledged that Plaintiff has severe mental impairments of anxiety disorder and depressive disorder, he determined that these impairments do not meet or medically equal the criteria of Listings 12.04 and 12.06. Tr. 20-21.   In his evaluation, the ALJ considered the degree of limitations imposed by Plaintiff's mental impairments in four functional areas (the "paragraph B criteria").   Tr. 21.   He found that Plaintiff has mild limitations in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace.   Tr. 21-22.   The ALJ also noted that Plaintiff has experienced no episodes of decompensation of extended duration.   Tr. 22.   Because Plaintiff's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, the ALJ found that Plaintiff's mental impairments do not satisfy the paragraph B criteria.   *Id.*   The ALJ noted that the detailed analysis of Plaintiff's RFC supports these findings.   Tr. 22, 27-28.

Plaintiff argues that the ALJ erred by relying on her allegations at step three and later finding them not entirely credible at step four.   Doc. 18 at 9-10. Furthermore, Plaintiff questions the ALJ's assessment of her function reports, asserting that the ALJ's analysis of her reports contradict her actual statements in the report.   *Id.* at 10-11.   The Commissioner responds that the ALJ discussed the relevant objective mental health records in making his findings and also properly relied on Plaintiff's self-reported abilities while discounting her credibility at step four.   Doc. 19 at 9-10.   The Commissioner further claims that the Court must affirm

the ALJ's decision so long as substantial evidence supports the ALJ's decision.   *Id.* at 10-11.

The listings describe impairments that the Commissioner considers severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience."   *See* 20 C.F.R. §§ 404.1625(a), 416.925(a).   If an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. . . ."   *Bowen,* 482 U.S. at 141, *cited in Sullivan v. Zebley,* 493 U.S. 521, 532 (1990).   The Eleventh Circuit has described how the standard is met or equaled:

> In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. A diagnosis alone is insufficient. [] In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson ex rel. Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987) (citing 20 C.F.R. § 416.925(c)-(d).   The burden of establishing that a claimant's impairments meet or equal a listing rests with the claimant, who must produce specific medical findings that satisfy all the criteria of a particular listing.   *Bell v. Bowen,* 796 F.2d 1350, 1353 (11th Cir. 1986) (citations omitted).   Here, Plaintiff does not contend that her mental impairments meet any listings or she met her burden at step three, but only questions the ALJ's assessment of evidence.   Doc. 18 at 9-11.

In the present case, the ALJ determined that the severity of Plaintiff's mental impairments does not meet or medically equal Listings 12.04 and 12.06.   Tr. 21-22.

In order to evaluate the severity of a mental impairment, the Commissioner's regulations require the application of a "special technique," which the ALJ applied in this case. 20 C.F.R. § 404.1520a; *see* Tr. 28. Under the special technique, the ALJ will rate the degree of functional limitation in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in the first three areas are rated on a five point scale of none, mild, moderate, marked, and extreme; and the fourth area is rated as none, one or two, three, four or more. 20 C.F.R § 404.1520a(c)(4). Once the degree of limitation in each area is determined, if the degree of limitation in the first three functional areas is none or mild and the fourth area is none, the ALJ generally will find, as he did here, the impairment is not severe, unless the evidence otherwise indicates more than a minimal limitation in ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). The ALJ's decision must incorporate findings and conclusions based on the special technique. 20 C.F.R. § 404.1520a(e)(4).

Here, the Court recommends that the ALJ properly evaluated Plaintiff's mental impairments under the paragraph B criteria. Plaintiff argues that the ALJ erred by relying on her allegations in assessing the severity of her impairments and later discounting her allegations in evaluating Plaintiff's RFC. Doc. 18 at 9-10. This argument and Plaintiff's use of the term "allegations," however, do not acknowledge the difference between Plaintiff's subjective complaints of pain and symptoms and Plaintiff's reports of daily activities. *See id.* The ALJ relied on

Plaintiff's *reported daily activities* in assessing the severity of her mental impairments while discounting her *allegations concerning the intensity, persistence, and limiting effects of her alleged symptoms* in evaluating her RFC.   Tr. 21-23, 27-28.

The regulations also recognize this distinction and provide that the ALJ may discount Plaintiff's subjective complaints based on her daily activities.   *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Doc. 18 at 9-10.   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work.   *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Foote*, 67 F.3d at 1561.   The ALJ compares *the claimant's statements* with the objective medical evidence, *the claimant's daily activities*, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).   Accordingly, contrary to Plaintiff's argument, the ALJ properly used the evidence of Plaintiff's subjective complaints and reported daily activities.   Tr. 21-23, 27-28.

To the extent that Plaintiff argues the ALJ improperly assessed her reports of daily activities, as the Commissioner points out, it is the function of the Commissioner, and not this Court, to resolve conflicts in the evidence.   *Lacina*, 606 F. App'x at 525 (citation omitted); Doc. 19 at 10-11.   The question before the Court

is whether the decision is supported by substantial evidence, not whether contradictory evidence exists.   *See Dyer*, 395 F.3d at 1211 (citation omitted). Hence, the Court will not recommend overturning the ALJ's decision simply because conflicting evidence exists, and here the ALJ resolved the conflicts in the evidence on the record.   *See Lacina*, 606 F. App'x at 525 (citation omitted).

Furthermore, although the ALJ found that his detailed assessment of Plaintiff's medical evidence supports his findings at step three, Plaintiff does not argue at all that the medical evidence supports otherwise, but only questions the ALJ's assessment of her daily activities.   Tr. 22, 27-28; Doc. 18 at 9-11.   As noted, the burden of establishing that Plaintiff's impairments meet or equal a listing rests not with the ALJ but with Plaintiff, who must produce specific medical findings that satisfy all the criteria of a particular listing.   *Bell*, 796 F.2d at 1353 (citations omitted).   As a result, the Court recommends that the ALJ properly assessed Plaintiff's mental impairments under the paragraph B criteria.

### c.  *Whether substantial evidence supports the ALJ's RFC findings*

On January 4, 2013, a state agency psychological consultant, Mercedes DeCubas, Ph.D., conducted an evaluation of Plaintiff's mental impairments based on the review of the evidence furnished.   Tr. 102-103.   She opined that Plaintiff has a medically determinable impairment of anxiety-related disorder, which does not satisfy the paragraph B criteria.   Tr. 103.   She noted that Plaintiff's anxiety disorder imposes mild restrictions on activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence or pace.

*Id.*   She further indicated that Plaintiff has no repeated episodes of decompensation of extended duration.   *Id.*   In addition, Dr. DeCubas opined that Plaintiff's mental impairment does not satisfy the paragraph C criteria.   *Id.*

Specifically, Dr. DeCubas found that Plaintiff has no understanding or memory limitations, although she has sustained concentration and persistence limitations. Tr. 107.   Dr. DeCubas noted that Plaintiff is not significantly limited in carrying out very short and simple instructions and making work-related decisions.   *Id.*   She also found that Plaintiff is moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychologically based symptoms and performing a consistent pace without an unreasonable number and length of rest periods.   *Id.*   Nonetheless, Dr. DeCubas indicated that there is no evidence of Plaintiff's limitation in performing activities with a schedule, maintaining regular attendance, being punctual within customary tolerances, sustaining an ordinary routine without special supervision and working in coordination with or in proximity to others without being distracted by them.   *Id.*   Dr. DeCubas concluded that Plaintiff is capable of attending, concentrating and persisting during the completion of "SRTS",[11] although timed-work may not be suitable for her.   *Id.*

Dr. DeCubas further indicated that Plaintiff has social interaction limitations. *Id.*   She opined that Plaintiff is moderately limited in interacting appropriately with the general public, but otherwise is not significantly limited or has shown no evidence

---

[11] Dr. DeCubas does not explain what "SRTS" stands for.   Tr. 107.

of limitation in other areas of social interaction.   Tr. 108.   She noted that Plaintiff will fit best in a work setting with limited social engagement.   *Id.*

With respect to Plaintiff's adaptation limitations, Dr. DeCubas indicated that Plaintiff is moderately limited in responding appropriately to changes in a work setting.   *Id.*   She found, however, that Plaintiff is not significantly limited in other aspects.   *Id.*   As a result, she opined that although Plaintiff may experience some difficulty responding to abrupt changes in a workplace, "no substantial deficits are evident."   *Id.*

Based on her overall evaluation, Dr. DeCubas found that Plaintiff is able to understand and remember simple one and two-step tasks, sustain the attention and concentration necessary to complete simple tasks, relate adequately to coworkers /supervisors and adapt to simple changes and avoid hazards in a routine work environment.   *Id.*   In assessing Plaintiff's RFC, the ALJ discussed and accorded great weight to the opinion of Dr. DeCubas because it is consistent with the record, including the treatment notes and Plaintiff's reported activities.   Tr. 26, 102-03, 107-08, 115-16, 120-22.

Plaintiff argues that the ALJ improperly accorded great weight to Dr. DeCubas' opinion by according greater weight to this opinion than to those of Dr. Ajo. Doc. 18 at 12 n.1.   Furthermore, she asserts that despite the ALJ's according great weight to Dr. DeCubas' opinion, the ALJ did not include Dr. DeCubas' identified limitations in his decision.   *Id.* at 12.   The Commissioner responds that the ALJ accounted for the limitations opined by Dr. DeCubas by limiting Plaintiff's RFC to

simple, routine, repetitive work with no time-production work; infrequent, casual and brief public contact; and the ability to adapt to simple changes in the workplace.   Tr. 22; Doc. 19 at 11.

Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of non-examining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(1)-(2).

The ALJ may give weight to state agency medical and psychological consultants' opinions to the extent that they are supported by substantial evidence in the record.   SSR 96-6p, 1996 WL 374180 (July 2, 1996).   In doing so, the ALJ considers various factors such as:

> the supportability of the opinion in the evidence including any evidence received at the [ALJ] and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

*Id.*

In appropriate circumstances, the ALJ may give greater weight to the opinions of state medical and psychological consultants than those of treating or examining

doctors. *Id.* Unless a treating source's opinion is given controlling weight, however, the ALJ must explain the weight given to the opinions of state agency medical consultants as the ALJ must do for other consultants, doctors or medical specialists. 20 C.F.R. § 404.1527(e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006).

Here, the Court recommends that the ALJ appropriately accorded great weight to Dr. DeCubas' opinion. As noted, the ALJ properly discounted the weight accorded to Dr. Ajo's assessments. Furthermore, the ALJ correctly found that Dr. DeCubas' opinion is consistent with Dr. Ajo's treatment notes, including unremarkable psychiatric evaluations of Plaintiff, and Plaintiff's reported daily activities. Tr. 26, 326-29, 521-22, 587-88, 671-72, 675-76, 695-96, 699-700, 704-05, 766, 768-69, 771-73, 777-78, 783, 788-89, 793. Because Dr. Ajo's treatment notes are consistent with Dr. DeCubas' opinion, the ALJ appropriately accorded great weight to this opinion. SSR 96-6p, 1996 WL 374180 (July 2, 1996); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873-74 (11th Cir. 2011) (finding that the ALJ appropriately gave little weight to the treating physician's opinion and significant weight to the opinions of the state agency medical consultants when the state agency's opinions did not contradict the treating physician's medical records). As a result, the Court recommends that substantial evidence supports the ALJ's decision to accord great weight to Dr. DeCubas' opinion. *See* SSR 96-6p, 1996 WL 374180 (July 2, 1996); *Jarrett*, 422 F. App'x at 874.

Plaintiff further argues that despite according great weight to Dr. DeCubas' opinion, the ALJ's RFC findings do not account for certain vocational limitations enumerated in the opinion. Doc. 18 at 12-13. The Commissioner responds that the ALJ's RFC findings account for these limitations. Doc. 19 at 11-12. To the extent that the limitations may not have been accounted for, the Commissioner argues that it was harmless error. *Id.* at 12-13.

The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The claimant's age, education, work experience, and whether she can return to her past relevant work are considered in determining her RFC, *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1520(f)), and the RFC assessment is based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips*, 357 F.3d at 1238; *Lewis,* 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

Here, as the Commissioner argues, the ALJ's RFC findings accounted for Plaintiff's vocational limitations that Dr. DeCubas provided. Doc. 19 at 11-12. As noted, Dr. DeCubas found that Plaintiff is able to understand and remember simple one and two-step tasks, sustain the attention and concentration necessary to complete simple tasks, relate adequately to coworkers/supervisors and adapt to

simple changes and avoid hazards in a routine work environment.   Tr. 108.   The ALJ accounted for these limitations by limiting Plaintiff's RFC to simple, routine, repetitive work with no timed-production work; infrequent, casual and brief public contact; and the ability to adapt to simple changes in the workplace.   Tr. 22.

Even assuming that the ALJ did not sufficiently account for Dr. DeCubas' vocational limitations, the Court recommends that this was not an error.   The ALJ is not limited to Dr. DeCubas' opinion in making his RFC assessment because the ALJ assesses Plaintiff's RFC based on all of the relevant evidence on the record.   *See* 20 C.F.R. § 404.1545(a).   Furthermore, although the ALJ may consider Dr. DeCubas' opinion, RFC assessments and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p, 1996 WL 374180 (July 2, 1996); 20 C.F.R. § 404.1527(d)(2).   The regulations provide that the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ."   20 C.F.R. § 404.1527(d)(2); *see Calvo v. Colvin*, No. 8:12-CV-1485-T-TGW, 2013 WL 3941027, at *5 (M.D. Fla. July 30, 2013) ("[T]he determination of the plaintiff's functional limitations in assessing the plaintiff's [RFC] is an issue assigned to, and reserved to, the Commissioner.").   Hence, the Court recommends that in assessing Plaintiff's RFC, the ALJ need not account for the vocational limitations opined by Dr. DeCubas.

Next, Plaintiff argues that the ALJ's alleged error of not accounting for the limitations in Dr. DeCubas' opinion led the VE to name jobs Plaintiff cannot perform. Doc. 18 at 13-14.   At step five of the sequential evaluation process, the burden shifts

to the Commissioner to produce evidence that there is other work available in significant numbers in the national economy that the claimant can perform given his RFC.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).   When a claimant, such as here, cannot perform the full range of work at a given exertional level or has non-exertional impairments that significantly limit his basic work skills, an ALJ may rely solely on the testimony of a VE.   *Jones*, 190 F.3d at 1230; *Foote*, 67 F.3d at 1559; 20 C.F.R. § 404.1566.   A VE's testimony will constitute substantial evidence if the ALJ's hypothetical question includes all of a claimant's functional limitations.   190 F.3d at 1229.

Here, as noted, the Court recommended that the ALJ's RFC findings properly accounted for Dr. DeCubas' limitations.   During the hearing, the ALJ posed a hypothetical question to the VE, which included all of the limitations he found regarding Plaintiff's RFC.   Tr. 22, 51; *see Jones*, 190 F.3d at 1229.   Given Plaintiff's limitations, the VE identified three jobs she could perform: housekeeper, laundry folder and sorter.   Tr. 29, 51-52.   These jobs identified by the VE have a specific vocational preparation ("SVP") level of 2 (Tr. 51-52), which corresponds to unskilled work.   SSR 00-4p, 2000 WL 1898704 at *3.   Unskilled work requires "little or no judgment to do simple duties."   20 C.F.R. § 416.968(a).   These positions do not exceed Plaintiff's mental limitations in the RFC to perform simple, routine, repetitive work.   Tr. 22.

Plaintiff further argues that the ALJ's decision does not contain the DOT numbers of the jobs the VE identified, leaving Plaintiff with no means of verifying

these jobs.   Doc. 18 at 13.   On the contrary, during the hearing, the VE specifically enumerated the DOT numbers of each job she identified, and the hearing transcript is part of the record.   Tr. 50-52.   Plaintiff may rely on this evidence to verify the DOT information of these jobs.   Plaintiff also asserts that the ALJ should have explained and resolved any conflicts between the VE's testimony and the DOT.   Doc. 18 at 13-14.   The Commissioner correctly argues that, although during the hearing the ALJ asked the VE to explain her answer if her answer varies from the DOT, the VE nor Plaintiff's attorney identified any variation.   Tr. 50-54; Doc. 19 at 13.   The ALJ's decision also articulates that the VE's testimony is consistent with the DOT.   Tr. 29.   Plaintiff does not provide any legal authority that the ALJ must explore conflicts between the VE's testimony and the DOT when there is no identified conflict. Doc. 18 at 13-14.

In addition, Plaintiff asserts that despite finding that Plaintiff has a moderate limitation in the area of concentration, persistence and pace, the ALJ improperly limited Plaintiff to simple, routine, repetitive work.   Doc. 18 at 14-15; Tr. 22. Plaintiff claims that the ALJ's hypothetical question to the VE did not account for this limitation.[12]   Doc. 18 at 15-16.

The Commissioner correctly responds that the Eleventh Circuit has held, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and

---

[12] The ALJ found that Plaintiff may perform simple, repetitive, routine work, and included this limitation in his hypothetical question to the VE.   Tr. 22, 51.

pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel*, 631 F.3d at 1180 (citations omitted); Doc. 19 at 14.   Accordingly, the Eleventh Circuit routinely has found that "a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations in concentration, persistence, or pace where the record shows that the plaintiff could perform such tasks." *Davis v. Comm'r of Soc. Sec.*, 11 F. Supp. 3d 1154, 1167 (M.D. Fla. 2014) (citations omitted); *see Hurst v. Comm'r of Soc. Sec.*, 522 F. App'x 522, 525 (11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1180); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876-77 (11th Cir. 2012); *Jarrett*, 422 F. App'x at 872 n.1.

Here, the Court recommends that medical evidence demonstrates Plaintiff's ability to engage in simple, routine tasks or unskilled work despite her limitations in concentration, persistence, and pace. *Winschel*, 631 F.3d at 1180 (citations omitted). As noted, Dr. Ajo's repeatedly found that Plaintiff had normal speech and psychomotor, fair or good judgment and insight and coherent, logical and goal-directed thoughts and was oriented in all spheres.   Tr. 521-22, 587-88, 671-72, 675-76, 695-96, 699-700, 704-05, 766, 768-69, 771-73, 777-78, 783, 788-89, 793.   Dr. DeCubas also opined that Plaintiff is capable of performing simple, routine tasks despite her moderate difficulties in maintaining concentration, persistence and pace. Tr. 103, 108.   Plaintiff does not argue at all, however, that the medical evidence supports a contrary conclusion.   Doc. 18 at 14-16.   As a result, the ALJ's limitation to simple, routine work in his RFC findings sufficiently accounts for Plaintiff's

limitations.   *See Winschel*, 631 F.3d at 1180 (citations omitted).   Based on the findings above, the Court recommends that substantial evidence supports the ALJ's RFC findings and hypothetical question to the VE.

### d.   Whether the ALJ properly assessed Plaintiff's credibility

In assessing Plaintiff's RFC, the ALJ found that Plaintiff's allegations are not entirely credible because Plaintiff's medical treatment has been effective, and she has not been "entirely compliant" with her health treatment.   Tr. 27.   Furthermore, the ALJ determined that Plaintiff's symptoms are not as severe as alleged because she did not pursue any further mental health treatment than participating in medication management.   *Id.*

Plaintiff argues that the ALJ's findings are based on an improper analysis of her testimony and evidence in the record, although she only had limited access to health care.   Doc. 18 at 18.   Plaintiff further asserts that the ALJ does not provide any specific evidence of record to support his findings.   *Id.*   The Commissioner responds that the ALJ properly discredited Plaintiff's subjective complaints.   Doc. 19 at 14-15.   The Commissioner also argues that the record contains numerous instances of Plaintiff's medical and physical treatment, and she does not provide any specific evidence to support her contention.   *Id.* at 15-16.

The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ."   *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the

claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Here, the Court recommends that the ALJ properly considered and evaluated Plaintiff's testimony regarding the effects of her alleged symptoms on her activities. Tr. 27. Based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms reasonably can be accepted as consistent with the objective medical and other evidence. Tr. 23-27. After properly discussing the standard and the medical evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 23.

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). "The question is not .

. . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011)*.   "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote, 67 F.3d at 1562*.   Here, based on his detailed analysis of the medical evidence, the ALJ discounted the credibility of Plaintiff's subjective complaints for the reasons clearly articulated in his decision.   Tr. 23-27.   As a result, the Court recommends that the ALJ properly discounted Plaintiff's subjective complaints and testimony. *See Wilson, 284 F.3d at 1225* (internal citations omitted); *Werner, 421 F. App'x at 939*.

## V.    Conclusion

Upon review of the record, the undersigned recommends that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.    The decision of the Commissioner be **AFFIRMED**.

2.    The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ENTERED** in Fort Myers, Florida on this 13th day of July, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record